**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HONEYWELL SAVINGS AND OWNERSHIP PLAN, HONEYWELL SECURED BENEFIT PLAN, HONEYWELL RETIREMENT EARNINGS PLAN, f/k/a The Signal Companies, Inc. Retirement Plan, and BRIAN MARCOTTE, as Plan Administrator of Honeywell Savings and Ownership Plan, Honeywell Secured Benefit Plan, and Honeywell Retirement Earnings Plan, | |
|         Plaintiffs, | Civ. No.  08-4265 (DRD) |
|         v. | **O P I N I O N** |
| MARK A. JICHA, individually and as Special Administrator of the Estate of Lynn Schockner, the Guardian of Charles Schockner, and the Conservator of the Estate of Charles Schockner, et. al., | |
|         Defendants. | |

*Appearances by:*

PROSKAUER ROSE LLP
by:  Amy Covert, Esq.
Russell L. Hirschhorn, Esq.
One Newark Center
18th Floor
Newark, NJ 07102

    *Attorneys for Plaintiffs*,

MANDELBAUM, SALSBURG, GOLD, LAZRIS, DISCENZA & STEINBERG, PC

by:  Stuart Gold, Esq.
155 Prospect Avenue
West Orange, NJ 07052

*Attorney for Defendants Mark A. Jicha, Jon Jicha, and Charles Jicha, f/k/a Charles Schockner,*

Manfred Schockner
C.S.P. 3A02
P.O. Box 3461
Corcoran, CA 93212

*Pro se Defendant.*

**DEBEVOISE, Senior District Judge**

Three Honeywell International, Inc. ("Honeywell") employee benefit plans and the plans' administrator filed an interpleader action in this Court to determine the proper beneficiary of the plans.  The dispute underlying this case arose from the death of Lynn M. Schockner, who was an employee of the predecessor company of Honeywell and a participant in the plans.  Manfred Schockner, the former husband of Lynn and the father of Charles Jicha (f/k/a Charles Schockner), is currently serving a sentence of life imprisonment in a California State prison after having been convicted of murdering Lynn in the first degree.  Defendants, Charles, Mark A. Jicha, and Jon Jicha (collectively, "Jicha Defendants"), brought the present motion for summary judgment, pursuant to Fed. R. Civ. P. 56.  The issue presented by the motion is whether, based on California's "Slayer Statute," California Probate Code §§ 250, 252 and 253, or federal common law, Manfred is ineligible to receive the benefits payable under the employee benefit plans.  For the reasons described below, the Court will grant the Jicha Defendants' request for summary judgment on the issue of Manfred's ineligibility to benefit from the plan proceeds.

# I.     BACKGROUND

Plaintiffs, Honeywell Savings and Ownership Plan ("HSOP"), Honeywell Secured

Benefit Plan ("HSBP"), Honeywell Retirement Earnings Plan ("Pension Plan," f/k/a The Signal

Companies, Inc. Retirement Plan) (collectively, "the Plans"), and the Plans' Administrator Brian

Marcotte (collectively, "Plaintiffs"), instituted this interpleader action, seeking a declaratory

judgment from the Court establishing the proper beneficiary of the benefits payable under the

Plans.  The Plaintiffs filed the Interpleader Complaint in this Court on August 22, 2008.  The

Complaint named various defendants.[1]  The Jicha Defendants filed an answer and made cross-

claims against the co-defendants and counterclaims against Plaintiffs, requesting a judgment

declaring that Charles is the sole beneficiary of the Plans.  Thereafter, Plaintiffs filed the First

Amended Interpleader Complaint seeking an order:  (1) declaring the lawful and proper

beneficiary of the benefits payable under the Plans; (2) restraining all defendants from

commencing, prosecuting or instituting any action or proceeding against them for the recovery of

benefits; and (3) discharging and absolving them from any further liability to each defendant and

any other claimant for the benefits arising under the Plans as a result of Lynn's death.

---

[1] Mark Jicha (Lynn's brother), who has a contingent interest in Lynn's estate and is the Special Administrator of Lynn's estate and the Guardian and Conservator of Charles; Jon Jicha (Lynn's brother), who also has a contingent interest in the estate; Charles; Herbert Schockner, Manfred's father; Charlotte Schockner, Manfred's mother; Ronald Schockner, Manfred's brother and the beneficiary of certain trust accounts held by Manfred and Lynn; Paul Schockner, Ronald Schockner's son, and the beneficiary of certain trust accounts held by Manfred and Lynn; Edward Tynan and Neal Ivan, friends of Manfred and Lynn, and residual beneficiaries of trust assets held by the Schockner family; Marc Gattie and the Farmers & Merchants Trust Company, respectively the trust officer and trustee of Manfred Schockner's trust.

Plaintiffs have voluntarily dismissed the claims against two defendants[2] and obtained default judgments against another group of defendants.[3]   Mark and Jon Jicha claim entitlement to the benefits of the Plans only on behalf of Charles and Lynn's estate.  Therefore, at this point in the suit, the only real parties in interests are Charles and Manfred.[4]  The deadline for completing discovery has passed.

Lynn Schockner was murdered on November 8, 2004 at her home in Long Beach, California.  On September 7, 2007 Manfred Schockner was convicted of hiring a hit man to murder his wife.[5]  At the time of the murder and also at the time of the commencement of this suit, Charles was a minor.  As Executor of Lynn's estate and Charles's Guardian, Mark Jicha instituted an action for wrongful death against Manfred for his role in Lynn's murder.  (Jicha Decl. ¶ 12.)  The parties ultimately reached a settlement agreement that was approved by the Superior Court of California by order dated December 21, 2006 ("Settlement Agreement").  The Settlement Agreement awarded Manfred and Charles some assets outright and the remainder of Manfred's assets went into an irrevocable trust ("Trust"), under which Manfred receives $7,000 per month and the trustee makes discretionary distributions of income and principal to Charles during the existence of the trust.  The Trust will continue until Charles reaches the age of 25, at

---

[2] Marc Gattie and the Farmers & Merchants Trust Company.

[3] Herbert Schockner, Charlotte Schockner, Ronald Schockner, Paul Schockner, Neal Ivan and Edward Tynan.

[4] Manfred has written various pro se letters to the Court, thereby entering an appearance.  The Court will consider him a party to the action, appearing pro se.  Pursuant to a request by Magistrate Judge Shipp at a conference on October 13, 2009, the parties have entered all of the correspondence from Manfred relating to this matter on the docket.

[5] Manfred appealed his conviction to the Court of Appeal of California.  The appeal is currently pending.

which time the Trust property will be distributed to Charles.  (Id. ¶ 12.)  Section 32(v) of the

Settlement Agreement states:

> The parties hereby agree that if any property or assets of any type, owned by
> either Manfred or Lynn, as community property or separate property, are
> discovered after this settlement agreement is signed, those assets shall pass
> according to Section 32.

(Jicha Decl. App. E.)  The Superior Court of the State of California for the County of Los

Angeles issued an Order approving the Report of the Executor, entered simultaneously with the

entry of the Order approving the Settlement Agreement.  (Supp. Jicha Decl. App. B.)  The

Superior Court ordered that the Executor "transfer all remaining estate assets to Farmers and

Merchants Trust Company who will ensure compliance with the terms of the Settlement

Agreement."  (Id.)

Lynn was an employee of Honeywell's predecessor company.  The benefits payable on

behalf of Lynn as of January 6, 2009 were:  $202,433.63 for the HSOP, $50,638.39 for the

HSBP, and $141.24 per month under the Pension Plan commencing March 1, 2019.  The HSOP

and the HSBP define "beneficiary" as the person who is or may become entitled to those

benefits.  (Gold Decl. App. A. § 2.11; App. B. § 1.04.)  Lynn did not designate any beneficiary

under any of these plans.  (Jicha Decl. ¶ 9.)  The HSOP provides:

> If a Participant fails to name a Beneficiary, or if the Beneficiary named by a
> Participant predeceases him, then the Trustees shall pay the Participant's Account
> Balance [] to the Participant's Spouse on the date of death, or if there is no such
> Spouse, the Participant's estate.

(Gold Decl. App. A. § 13.1.)

The HSBP states:

> In the absence of an effective designation of a Beneficiary or Beneficiaries
> pursuant to this Section 11.01, the surviving spouse of a married Participant shall
> be the sole Beneficiary of the balance in the Participant's Account.  In the absence

of an effective designation of a Beneficiary or Beneficiaries pursuant to this Section 11.01, the unmarried Participant's estate shall be the Beneficiary of the balance in the unmarried Participant's Account which is not subject to an effective Beneficiary designation.

(Id. App. B. § 11.01.)

The Pension Plan provides:

Effective August 23, 1984, if a participant who has fulfilled the requirements for a Vested Retirement Benefit dies before his entire benefit has been paid to him and before the earliest date which the Participant could have designated as his Early Retirement Date, his surviving spouse, if any, shall be entitled to receive…the benefits…unless (i) the Participant has elected…not to provide coverage in the form of a Qualified Preretirement Survivor Annuity or (ii) such spouse had not been married to the Participant for at least one year at the time of his death.

(Id. App. C. § 4.9(j).)

Manfred submitted a document, dated January 29, 1980, which appears to be Lynn's beneficiary designation for the Signal Companies, Inc. Savings and Stock Purchase Plan (Signal Plan). (Dkt. # 72.)  Manfred has not submitted any documentation linking the Signal Plan to any of the existing Plans in which Lynn was enrolled.

## II.  DISCUSSION

The issue presented by the motion is whether, based on California's "Slayer Statute," California Probate Code §§ 250, 252 and 253, or federal common law, Manfred is ineligible to receive the benefits payable under the Plans.  The Court will grant the Jicha Defendants' request for summary judgment on the issue of Manfred's ineligibility to benefit from the plan proceeds, because both California's Slayer Statute and the federal common law dictate that result.  In light of that decision, the Court will grant the declaratory relief requested in the Amended Interpleader Complaint by declaring that Lynn's estate is the lawful and proper beneficiary of the benefits

6

payable under the HSOP and HSBP, and no proper beneficiary exists for the Pension Plan benefits.

The Jicha Defendants argue that the Court should apply California's Slayer Statute, or in the alternative, federal common law, to arrive at the conclusion that having been convicted of the Lynn's murder, Manfred may not benefit from any of the Plans.  The Jicha Defendants contend that such a finding would dictate that the Pension Plan cannot be disbursed to any party and the HSOP and HSBP should be awarded to the Trust, for the ultimate benefit of Charles.

The Plaintiffs contend that the benefits should be paid to Manfred, in accordance with the Plan documents, since ERISA preempts state law, Supreme Court jurisprudence dictates that result, and a ruling that the benefits from the Plans be paid in violation of the terms of the Plans would jeopardize the tax qualified status of the Plans.  In the alternative, if the Court finds that Manfred is an ineligible beneficiary, the Court should declare that the HSOP and HSBP benefits are payable to Lynn's estate and the Pension Plan benefits are not payable to anyone.

Manfred, in a series of pro se submissions to the Court, argues that the benefits from the Plans are covered by the Settlement Agreement and were disclosed to Lynn's marital attorney in 2004.  He also argues that he was the named beneficiary of the Plans.

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

In a motion for summary judgment, the moving party has the burden of showing that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine issue of fact exists and a trial is necessary.  Id. at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just create "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but, rather, to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there are no issues that require a trial, then judgment as a matter of law is appropriate.

The administration of the Plans is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Congress passed ERISA in 1974 to establish a comprehensive federal scheme for the protection of the participants and beneficiaries of employee benefit plans.  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987).  ERISA's preemption clause specifies, in pertinent part, that the provisions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  The Supreme Court of the United States has repeatedly observed that ERISA's broadly worded preemption provision is "clearly expansive."  Egelhoff v. Egelhoff,

8

532 U.S. 141, 147 (2001) (citing past Supreme Court decisions relating to ERISA preemption). However, the courts must draw some reasonable limits on its scope, especially in areas traditionally reserved for state regulation. See, e.g., De Buono v. NYSA-ILA Med. and Clinical Serv., 520 U.S. 806, 814 (1997). To determine whether ERISA preempts a particular state law, the Court should look "both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." Egelhoff, 532 U.S. at 147 (internal quotations and citations omitted).

In Egelhoff, the Supreme Court applied this standard to hold that ERISA preempted a Washington state statute providing that a divorce supersedes earlier designations of beneficiaries for benefits under employee benefit plans governed by ERISA. The majority opinion, in which seven justices joined, noted that because the Washington statute "binds ERISA plan administrators to a particular choice of rules for determining beneficiary status," it "runs counter to ERISA's commands that a plan shall specify the basis on which payments are made to and from the plan and that the fiduciary shall administer the plan in accordance with the documents and instruments governing the plan." Id. (citing 29 U.S.C. § 1102(b)(4)) (internal quotations omitted). Additionally, the Egelhoff Court noted that requiring plan administrators to take into account statutes like the Washington statute would interfere with the congressional goal of nationally uniform plan administration. Id. at 148-49.

Opponents of preemption in Egelhoff argued that a holding in favor of preemption would similarly require preemption of slayer's statutes like the California statute at issue here. The Supreme Court dismissed that argument, and in dicta noted that "the principle underlying [slayer] statutes—which have been adopted by nearly every state—is well established in the law and has a long historical pedigree predating ERISA." Id. at 152. Additionally, because the

9

statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least

debatable." Id.  More recently, the Supreme Court in Kennedy v. Plan Admin'r for DuPont Sav.

and Inv. Plan, 129 S. Ct. 865, 877 n. 14 (2009), again declined to decide the slayer statute issue,

not presented by the case before it.

The state law at issue here is California's Slayer Statute, §§ 250, 252 and 253 of the

California Probate Code.  Section 250 states, in relevant part:

> A person who feloniously and intentionally kills the decedent is not entitled
> to…[a]ny property, interest or benefit under a will of the decedent … [or]…any
> property of the decedent by intestate succession…

Section 252 provides:

> A named beneficiary of a bond, life insurance policy, or other contractual
> arrangement who feloniously and intentionally kills the principal obligee or the
> person upon whose life the policy is issued is not entitled to any benefit under the
> bond, policy, or other contractual arrangement, and it becomes payable as though
> the killer had predeceased the decedent.

Section 253 states:

> In any case not described in Section 250, 251, or 252 in which one person
> feloniously and intentionally kills another, any acquisition of property, interest, or
> benefit by the killer as a result of the killing of the decedent shall be treated in
> accordance with the principles of this part.

No controlling precedent determines whether ERISA preempts state slayer statutes in

general or the California Slayer Statute in particular.  Since Egelhoff, several district courts

considering this issue have reasoned that based on the dicta in Egelhoff, it is likely that ERISA

does not preempt state slayer statues, but that it is unnecessary to determine the preemption issue

since federal common law provides the same result as a slayer statute.  See Life Ins. Co. of N.

America v. Camm, 2007 U.S. Dist. LEXIS 58456 (S.D. Ind.); Conn. Gen. Life Ins. Co. v. Riner,

351 F. Supp. 2d 492 (W.D. Va.); Atwater v. Nortel Networks, Inc., 388 F. Supp. 2d 610

(M.D.N.C. 2005); <u>Admin. Comm. For the H.E.B. Inv. And Ret. Plan v. Harris</u>, 217 F. Supp. 2d

759 (E.D. Tex. 2002).  When ERISA preempts state law but is itself silent on a topic, courts must

develop a body of federal common law based on principles of state law.  See <u>Dedeaux</u>, 481 U.S.

at 56.  "The development of federal common law under ERISA is appropriate only when

necessary to fill in interstitially or otherwise effectuate the statutory pattern" enacted by

Congress.  <u>Fotta v. Trustees of the UMW Health and Ret. Fund of 1974</u>, 165 F.3d 209 (3d Cir.

1998) (internal quotations and citations omitted).

       None of ERISA's provisions address the distribution of benefits to a beneficiary

responsible for killing the plan participant.  Therefore, under <u>Dedeaux</u>, 481 U.S. at 56, it is

necessary to turn to federal common law for a governing rule.  The federal common law

regarding slayers derives from the common law principle that no person should be permitted to

profit from his own wrong.  See <u>Prudential Life Ins. Co. v. Tull</u>, 690 F.2d 848, 849 (citing

<u>Shoemaker v. Shoemaker</u>, 263 F.2d 931, 932 (6th Cir. 1959); see <u>N.Y. Mut. Life Ins. Co. v.</u>

<u>Armstrong</u>, 117 U.S. 591, 600 (1886) ("It would be a reproach to the jurisprudence of the

country, if on [sic] could recover insurance money payable on the death of a party whose life he

had feloniously taken.")  The Court is in agreement with numerous other courts that in enacting

ERISA, Congress could not have intended to ensure recovery of ERISA benefits when one

spouse intentionally kills the other spouse.  See <u>Harris</u>, 217 F. Supp. 2d at 761; <u>Riner</u>, 351 F.

Supp. 2d at 497.

       Thus, under either the preemption analysis or the federal common law, the principles

governing the California Slayer Statute apply to make Manfred ineligible to receive the benefits

from the Plans, having been convicted of Lynn's murder.  In light of the Court's decision,

Manfred's argument that he was the designated beneficiary of the Plans is inapposite.  The result

is the same whether he was the designated beneficiary or not.  Manfred is not eligible to receive any benefits because he may not profit from his wrongful act.

Therefore, assuming that Manfred predeceased Lynn, the Court will turn to the terms of each of the Plans to determine the proper beneficiary.  Under the HSOP, if the participant fails to name a beneficiary or the beneficiary predeceases the participant, the administrator should pay the benefits to the participant's spouse, or if there is no such spouse, to the participants estate. The HSBP has a similar provision, stating that in the absence of a beneficiary designation, the surviving spouse shall be the beneficiary, and an unmarried participant's benefits should be paid to the participant's estate.  Accordingly, the Court declares that Lynn's estate is the proper beneficiary of the benefits from the HSOP and HSBP.

The Court is aware that the practical effect of paying the benefits to Lynn's estate is that Mark Jicha, the estate's Executor, will be required by the Superior Court Order to transfer all estate assets to the Trust.  However, the clear terms of the HSOP and HSBP require that the benefits be paid to the participant's estate.  The Court does not see fit to contradict the terms of the HSOP and HSBP by ordering a payment directly to the Trust.

The Pension Plan, on the other hand, states that the surviving spouse, if any, is entitled receive the benefits.  The Pension Plan provides for no other contingency.  Therefore, assuming that Manfred predeceased Lynn, Lynn had no surviving spouse, so there is no beneficiary to whom the Pension Plan may be paid.  The Pension Plan benefits will not be paid to any person.

## III.  CONCLUSION

For the foregoing reasons, the Court will grant the Jicha Defendants' motion for summary judgment on the issue of Manfred's ineligibility to benefit from the proceeds of the Plans.  It

follows that no other issues remain for trial, so the Court will grant the Plaintiffs' request for declaratory judgment.  The Court will enter an order implementing this opinion.


_____ s/ Dickinson R. Debevoise _____
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: January 15, 2010

13